IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEILA K. PETERSON, as Administratrix of the Estate of BRANDON C. PETERSON, deceased, and in her own right, | ) ) ) ) | CIVIL ACTION<br><br>No. 2:23-cv-00136-CCW |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MURROW'S TRANSFER, INC., and LOGAN J. DENNY, | ) ) ) ) | |
| Defendants. | ) | |

**BRIEF IN OPPOSITION TO MOTION IN LIMINE NO. 1 OF FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK DODIG LLP TO LIMIT THE SCOPE OF THE EVIDENTIARY HEARING**

AND NOW, comes Sheila Peterson, as Administratrix of the Estate of Brandon C. Peterson, and individually, in the above referenced action, by and through her counsel, Richard C. Thiele, Esquire, George C. Miller Jr., Esquire, and Goldleaf Law, PLLC, and submits their Brief in Opposition to the Motion in Limine No. 1 of Feldman Shepherd Wohlgelernter Tanner Weinstock Dodig LLP ("Feldman Shepherd") (ECF No. 74), in support of their Response in opposition to the same, and in support of conducting the hearing in a manner with full and fair opportunity to present relevant and admissible evidence without prejudice of trying to limit scope of the evidentiary hearing.

This Brief in Opposition is submitted pursuant to this Court's Order of October 31, 2023 and amendment thereto by Order dated January 16, 2024.

**I.    RELEVANT BACKGROUND**

Mr. Brook Peterson and Mrs. Sheila Peterson suffered the death of their son, eighteen years old, caused by a tractor trailer verses pedestrian accident on December 22, 2020. Fourteen days

later, January 5, 2021, two attorneys from the firm of Feldman Shepherd traveled from Philadelphia to Mount Pleasant, Westmoreland County, Pennsylvania in effort to have Mr. And Mrs. Peterson sign as clients. They met with the Petersons at a local business owned by Mr. Peterson's family member. After approximately an hour or so of conversation, a single one-page document with both the Petersons' names pre-typed on the form, less than a half page (½) in length of text, excluding the signature lines, was presented to the Petersons by the lawyers requesting signatures.  The Petersons were informed that it was an eight-figure case and it was very important the Petersons sign the short form at that time so Feldman Shepherd could take action to preserve evidence, otherwise the evidence could be lost which could harm their son's case. The Petersons were informed that a longer form would follow.  The half page typed document states the client has "read the agreement and has received a duplicate of this agreement."  Mr. Brook Peterson and Mrs. Sheila Peterson signed the ½ page document titled "Contingent Fee Agreement," and then, one attorney, Mr. Feldman, signed the agreement allowing for one-third (1/3) contingent fees thereby engaging the services of Feldman Shepherd.  No copy was provided to the Petersons at the time, no longer form followed; however, years later, a modified version of the same ½ page fee agreement executed on January 5th, 2021, was provided with a modified higher fee percentage and a second signature by only Mr. Feldman, this was below all writing and below his prior signature, this document was provided to the Petersons years later post settlement dispute. After signing the document, unbeknownst to the Petersons, they came to be identified as uncooperative clients, and their case would be well documented to pursue settlement by the firm. Material misstatements were made to the clients regarding settlement and fees, along with issues of client communications involving settlement and fees which never occurred, re-use of client signatures on documents, among other material matters, including, but not limited to misstatements pertaining

to assets of defendants, efforts to not settle, among others. These facts are material and of consequence in determining the three current questions before the court; express authority given to settle, ratification, and contractual obligations regarding fee dispute.    Feldman Shepherd now requests that the court limit the scope of the hearing regarding all three questions before the court; contractual fee dispute, express consent to settle, and ratification.

**II. ISSUES**

1. The question presented by this case is whether proceeding with or without a full and fair opportunity to present evidence could forever preclude the Petersons from future actions arising out of the same dispute and or involving the same parties and claims. A recent Eastern District of PA case from June of 2023, raises the issue: legal malpractice, breach of contract and related claims, must be asserted as a compulsory counterclaim to a contract action, "courts have consistently held that clients must assert malpractice claims as part of any action seeking payment of fees." Prior counsel (Feldman Shepherd) is seeking payment of legal fees and there is a contractual fee dispute.

2. Would limiting the scope of the evidentiary hearing for determining a contractual dispute regarding an amended contract; ratification of authority, or if express authority was obtained, in the current case with evidence so closely intertwined with possible malpractice related claims (i) result in fundamental unfairness in the resolution of the case and evidence exclusion be an abuse of discretion, or violate the fundamental due process rights of Petersons; or (ii) would limiting evidence enable Feldman Shepherd to use a sword-and-shield tactic where they would gain the unfair advantage by intentionally and selectively producing evidence that would later shield them from future malpractice related claims.

**III.   ANSWERS**

1. Yes, because the claims of the fee dispute and claims of a possible malpractice action arise out of the same representation at issue, courts have held that it is a clear offshoot of the same basic controversy between the parties. <u>Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.,</u> 292 F.3d 384 (3d Cir. 2002).

2. Yes, these claims are related, and so closely intertwined that the contract action, malpractice action, is a compulsory counterclaim that may be asserted in the collection efforts of Feldman Shepherd.  Courts have consistently held that clients must assert malpractice claims as part of any actions seeking payment of fees. <u>Crawl Space Door Sys. v. White & Williams, LLP</u>, No. 22-4698, 2023 U.S. Dist. LEXIS 108203 (E.D. Pa. June 22, 2023), And Yes, (i) limiting the scope of the hearing would result in fundamental unfairness in the resolution of the case and its exclusion would be an abuse of discretion, prejudicial error, and rise to the level of violating the fundamental due process rights of Petersons. <u>Smith v. Crown Equip. Corp.,</u> CIVIL ACTION NO. 97-541, 1998 U.S. Dist. LEXIS 13290 (E.D. Pa. Aug. 21, 1998) and yes, (ii) limiting the scope of the evidentiary hearing would enable Feldman Shepherd to use a sword-and-shield tactic where they would gain the unfair advantage by intentionally and selectively producing evidence that may later shield them from future malpractice related claims through collateral estoppel. <u>Falise v. Am. Tobacco Co</u>., 193 F.R.D. 73 (E.D.N.Y. 1999).

**IV.   ARGUMENT**

As set forth in the answers above, Feldman Shepherd's motion in limine is seeking to preclude relevant and necessary evidence and testimony required for presentation of the Peterson case regarding all three matters to be determined by the court.  Limiting the scope of the relevant

evidence and testimony for presentation to the court would severely prejudice Petersons ability to present their case and would be an abuse of discretion. *United States v. Fattah*, 914 F.3d 112, 179 (3d Cir. 2019). The Petersons will be required to testify and present evidence with full and fair opportunity to select from all the relevant personal interactions, correspondences and communications.  For judicial efficiency, and conducting the hearing within a two-day period, all interactions with their prior counsel regarding their agent – attorney client relationship as to how, when and why express authority would and could have been given to conduct activities by or for the clients is required for the fact finder.  The relationship, interactions and manner in which all grants of authority would have been given or not given will require witnesses' ability to utilize the broad scope of exhibits and available testimony.  The doctrine of ratification is factual and legal determination based on an assumption there was no prior authority.  Therefore, the history of actions will assist the trier of fact to learn when actions of authority were, if ever, became or could have become known, and will require broad availability of testimony both to demonstrate, and in response to the other parties' and nonparties' position and statements regarding ratification.  Most importantly, pursuant to the very limited fact discovery that was conducted prior to the hearing, having access to a broad range of exhibits and testimony to present and to respond in kind on all issues that arise during the hearing will promote a fair and just hearing for both sides.

### V.   CONCLUSION

For the reasons set forth above, the court should not limit the scope of the evidentiary hearing.

Respectfully submitted,

Date:   January 19, 2024

/s/ Richard C. Thiele
Richard C. Thiele, Esquire
Goldleaf Law, PLLC

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Brief in Opposition to Motion in Limine No. 1, To Limit the Scope of Discovery, was served upon the following persons by electronic service using the CM/ECF system:

David H. Colvin, Esquire
DColvin@foxrothschild.com

Abraham C. Reich, Esquire,
AReich@foxrothschild.com
Fox Rothschild LLP

*Counsel for Feldman Shepherd*

By: /s/ Richard Thiele, Esq.
Richard Thiele., Esquire
PA ID #94484